UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

Ind. No.
19 cr 442 (BMC)

-against-


JOHN CAHILL,

Defendant.
--------------------------------------------------------x



# SENTENCING MEMORANDUM



Jeffrey G. Pittell
**MAHER & PITTELL, LLP**
*Attorneys for Defendant*
42-40 Bell Blvd., Ste. 302
Bayside, New York 11361
(516) 829-2299

## TABLE OF CONTENTS

**Item**                                                                          **Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

PERSONAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

MR. CAHILL'S OFFENSE CONDUCT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

REQUESTED SENTENCE AND SUPPORTING REASONS . . . . . . . . . . . . . .   5

OUTSTANDING OBJECTIONS TO THE PSR . . . . . . . . . . . . . . . . . . . . . . . . .   9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## PRELIMINARY STATEMENT

This Sentencing Memorandum is submitted on behalf of John Cahill.  Pursuant to the Plea Agreement in this case, the applicable upon advisory Sentencing Guideline range (including the one point reduction for a global plea by all co-defendants) is 4 to 12 months.  For the reasons stated herein, we respectfully request that Mr. Cahill be sentenced to a term of two years probation.

## PERSONAL BACKGROUND

### Introduction

John Cahill is twenty-nine years old.  He is a native New Yorker.  He was born, in 1992, in Brooklyn, New York.  He lived in Brooklyn until age 16 when his family moved to Staten Island.  He still lives on Staten Island.

Vocationally, John's aspired to be a New York City firefighter.  After high school, he took emergency management college classes at SUNY Empire (in Staten Island) and took the FDNY entrance exam.  He scored well on the exam and was placed on academy admission waiting list.  However, it appears that, due to medical reasons, he does not qualify for the job.

John has a strong work ethic.  He has not shied away from working with his hands or taking on jobs which involve menial labor.  When he was in high school, he bagged groceries at a local *Key Food* supermarket.  Thereafter, he was worked at

various construction jobs including being a day laborer and a plumber's assistant. During September 2019, he obtained a job as an electrician apprentice.  At the time, he was excited at the prospect of acquiring an opportunity to learn a skilled trade which he could pursue his entire life.  Unfortunately, this optimism was short lived. The following month, the apprenticeship was terminated due to his being arrested in this case.

Following John's arrest, a close friend, Joshua Gibson -- who is the owner of *Degmor Environmental Services* ("Degmor") -- gave him a job working as a mold abatement laborer.  John worked at Degmor until its operations were slowed down due to the onset of the Pandemic.  Currently, John has resumed working as a self-employed house painter.

Mr. Gibson has submitted a letter on behalf of John.  From his letter, John's diligent work ethic is readily apparent.  In pertinent part, he writes:

> I came into association with Mr. Cahill through mutual friends and since then I have in-trusted in Mr. Cahill with in tasks that go beyond a regular friendship. I am a Supervisor and owner of a environmental company and I have called upon Mr. Cahill time after time to oversea jobs, ensure safety, and to be effectively diligent and respectful to my clients. Mr. Cahill has always performed in a leadership role by helping others, leading by example, showing up on time, and always showing pride in his work. These values and attributes of Mr. Cahill go hand and hand with values I hold deep to myself as a United States Veteran.

(A full copy of Mr. Gibson's letter is in the Exhibits to this Memorandum).

2

John is remorseful for his offense conduct.  This is noted in the letters submitted by his parents.  His mother, Dorothy Suksdorf, reports that "over that time John has repeatedly expressed remorse and regret for his actions during our conversations."  His father, John Cahill, Sr. writes, "John hit a bump in the road and understands the seriousness of his offenses . . . " (Full copies of their letters are in the Exhibits).

In anticipation of John's sentencing, two of his close friends have submitted letters on his behalf.  (Copies of their letters are in the Exhibits).  Collectively, these letters demonstrate that John is a person who stands ready and willing to help and support friends who are in need.

For example, *Mahnoor Syed*, an attorney who has been a close friend with John for more than twelve years (since they were in high school together), writes:

> A few years ago, my father underwent a second coronary bypass surgery. John was aware of how stressed my family and I were, since this was the second time my father had to undergo this procedure. As a result of the surgery, patients are restricted from putting too much strain on their sternum. John knew my father had a tendency of not following by the doctor's orders. Therefore, every winter since my father's procedure, John will come shovel our driveway and sidewalk, without anyone ever asking him to. John has always gone out of his way to see if my father needs help with anything and I cannot thank him enough.

> John has showed me a significant amount of support, throughout my law school journey. Even when I did not believe in myself, he only saw the best in me.

3

Similarly, *Omar Elgamal*, a New Jersey State Trooper, who has been friends with John for the past five years, writes:

> He is a selfless friend who always helps those around him. John has been there for me whenever I needed him. Whether it was to help me move into my new home, help my mother lay down flooring, help my wife take our dog on walks when neither of us were available, John was always there. These are just small examples of how much value John brings into my life and how he is morally. I trust that these characteristics are emulated in his day to day life.

## MR. CAHILL'S OFFENSE CONDUCT

The offense conduct -- regarding all the defendants named in the Indictment -- is described over the course of twenty-four pages (pp. 4-26, consisting of seventy-eight paragraphs) in the PSR.  Yet, Mr. Cahill's offense conduct is limited to a single paragraph (¶53) which states:

> Beginning in October 2018, [a co-defendant] and John Cahill together with [two co-defendants], owned and operated an illegal gambling club on Wild Avenue in Staten Island.  At the club, players could play blackjack games or poker games and the business took a percentage of the money wagered.  In addition to the owners, the club employed two dealers and one or more waitresses.

In essence, Mr. Cahill, together with others, operated an unlicensed club -- which operated approximately once a week for a year (from October 2018 through October 2019) -- where patrons came to have drinks, socialize and play poker and blackjack card games.

## THE ADVISORY SENTENCING GUIDELINES

The PSR calculates Mr. Cahill's Base Offense level at 12. Subtracting two levels for Acceptance of Responsibility, his Total Offense Level ("TOL") is Level 10. He does not have a criminal history. Accordingly, his Criminal History Category ("CHC") is I.

The PSR's calculation does not include the one level global plea reduction, which -- as noted in the Plea Agreement and apparently applied in prior sentencing proceedings of co-defendants -- the Government agrees is applicable. Taking this reduction into account, Mr. Cahill's TOL is Level 9. This TOL, with CHC I, corresponds to an advisory sentencing guideline range of 4 to 10 months.

## REQUESTED SENTENCE AND SUPPORTING REASONS

For the reasons set forth herein, we respectfully request Mr. Cahill be sentenced to a term of **two years probation**. We contend this sentence is fair and just based upon a combination of following reasons:

***First***, under 18 U.S.C. §3553(a)(1), prior to imposition of a sentence, a court shall consider the "history and characteristics of the defendant." Accordingly, we respectfully request the Court consider Mr. Cahill's personal background as set forth in this *Sentencing Memorandum*.

5

**Second,** 18 U.S.C. §3553(a)(1) also requires a court to consider the "nature and circumstances of the offense." We acknowledge the offense conduct is a federal crime and all federal crimes are serious. However, we urge the Court to take into consideration that the offense in this case did not involve acts of violence, did not intend nor cause physical harm other persons, did involve the distribution of narcotics and did seek to defraud other persons.

**Third**, 18 U.S.C. §3553(a)(4) requires a sentencing court to take the advisory sentencing guidelines into consideration. As indicated above, we contend Mr. Cahill's TOL is Level 9 which corresponds to an advisory range of 4 to 10 months. The TOL which is one step down from Level 9 (i.e., Level 8) corresponds to an advisory range of 0 to 6 months. Accordingly, by requesting a sentence of probation, we are requesting the Court consider imposing a modest variance by going down a single Guideline Level. Although §3553(a)(4) requires that the advisory Sentencing Guidelines must be taken into consideration, we trust the Court is well aware that they are not hard-fast and no longer mandatory. For example, in *Rita v. U.S.*, the Supreme Court stated the Sentencing Guidelines now only "reflect a rough approximation of sentences that might achieve §3453(a)'s objectives." 127 S.Ct. 2456, 2464 (2007).

In light of this circumstance, we submit a slight downward variance -- down a single offense level -- is not abhorrent to §3553(a)(4).

***Fourth,*** 18 U.S.C. §3553(a)(6) requires a court to consider the need to avoid unwarranted sentence disparities.  In regard to this factor, we urge the Court to consider that sentences of probation have been imposed upon co-defendants Master-Joseph and Suka in this case.  Like Mr. Cahill, both of these defendants did not have prior criminal histories.  According to the sentencing submissions filed in regard to these co-defendants, it appears that both of them had advisory Sentencing Guideline ranges which were far higher the Mr. Cahill.  In addition, the submissions indicated their alleged offense conduct was related to the collection of extortionate loans made to other persons.  In contrast, Mr. Cahill's offense conduct -- running an illegal poker game -- is devoid of such allegations.

For the Court's reference a summary chart of the sentences of these two defendants is as follows:

| Defendant | Offense | TOL | CHC | Guideline Range | Sentence |
|---|---|---|---|---|---|
| Master-Joseph | 18 U.S.C. § 894(a)(1) Extortionate Collection of Credit | 16 | I | 21 to 27 months | 2 years probation |
| Suka | 18 U.S.C. § 1952(a)(3); Travel Act Violation | 14 | I | 15 to 21 months | 3 years probation (6 mos RRC) |

7

**Fifth,** in terms of punishment, we urge the Court should consider the collateral consequences -- some which are permanent and life impacting -- which will be imposed upon Mr. Cahill, who is only twenty-nine years old, due to his being convicted of a federal felony offense. Some of these include the following:

- Mr. Cahill will be branded a "convicted felon" for the rest of his life.

- Due to this conviction, he will be denied various rights and privileges such as the right to serve on a jury and being eligible for certain types of employment requiring licensing or certification.

- Due to his having a federal felony conviction, for being named in an organized crime RICO indictment, Mr. Cahill will inevitably lose out on some employment opportunities. When he applies for a job, a criminal background check may be conducted. This will disclose he was charged in an organized crime indictment. Undoubtedly, this will scare away some employers from hiring him. Even if an informal check is conducted -- such as a *Google* search for the term "John Cahill arrest" -- the employer will instantly find out about this case. This first hit, on a *Google* search for the term "John Cahill arrest" discloses a press release the Government issued about this case. (Copies of the first page of a *Google* search for "John Cahill arrest," and the Government's Press Release, are in the Exhibits).

Due to the punitive nature of these collateral consequences, we submit it is reasonable for the Court to grant the downward variance requested on behalf of Mr. Cahill.

## OUTSTANDING OBJECTIONS TO THE PSR

The following objections to the PSR are still outstanding:

**Characterization of Mr. Cahill as an organized crime "associate" (¶¶19, 80)**

Previously, we objected to characterization of Mr. Cahill as an "associate" of the organized crime family referenced in the PSR and requested that all such characterizations be deleted from the PSR.

The term "associate" has specific meaning as it is defined and used in the context of organized crime prosecutions.  It indicates the person is part of, albeit not a full member in, an organized crime family.  Arguably, it implies the person has been engaging in criminal activities, for the benefit of the organized crime family, for a prolonged period of time.

Mr. Cahill is not an "associate" of the organized crime family referenced in the PSR.  Mr. Cahill does not have a prior criminal record.  His sole offense conduct in this case was limited to his assisting in the operation of an illegal porker and blackjack club (which operated, approximately once or twice a week, over the course of about one year) in violation of 18 U.S.C. 1955(a).  Count Ten of the Indictment, alleges the club was operated with other persons, some of whom are alleged to have been member(s) and/or associate(s) of an organized crime family.  Mr. Cahill is not

9

charged in any of the other counts, including the RICO counts, set forth in the Indictment.   We submit his involvement in running the poker game does not automatically elevate him to the level of being an "associate" of an organized crime family.

The Probation department has refused to remove these characterizations claiming that they are factually accurate because they were provided by the Government.

### Allegations about Mr. Cahill and John Doe #6 (¶63)

The PSR (¶63) alleges that, "on one occasion, [Two co-defendants, a cousin of a co-defendant and Mr. Cahill] encountered John Doe #6 at Play Sports Bar, where Mr. Cahill and [the cousin] put their hand on him in a manner that made John Doe #6 feel as though his safety was in jeopardy if he failed to make timely payments."

The PSR references to this incident in the Other Criminal Conduct section of the PSR (¶98) and also references it as a factor that may warrant a departure (¶153)

We previously denied and objected to these allegations and requested that Mr. Cahill's name must be deleted from these paragraphs.

10

In response, the Probation department has refused to remove these paragraphs claiming they are factually accurate because they were provided by the Government.

**Information about LCN and unrelated conduct of co-defendants**

As noted above, Mr. Cahill is not an associate of an organized crime family. Most certainly, had this case proceeded to trial, and if the co-defendants had not pled guilty, we would have moved for severance of Mr. Cahill's trial on the ground of spillover prejudice as the charges, and allegations asserted against many of the co-defendants, (which include racketeering, loansharking and threats of violence) are wholly unrelated to Mr. Cahill.

The PSR contains seventy-eight paragraphs (over the course of twenty-four pages) which provide an overview of organized crime and the alleged conduct of the co-defendants.  Other than the allegations in a single paragraph (¶53), the other seventy-seven paragraphs have nothing to do with Mr. Cahill.  We submit the presence of these paragraphs in the PSR serves no apparent purpose.  Notably, they do not aid the Court in fashioning a fair and just sentence for Mr. Cahill.

Moreover, sheer volume of these allegations -- comprising twenty-four pages -- compared to the PSR only reporting three pages about Mr. Cahill's personal

background is highly prejudicial.  Against this backdrop, on its face, the PSR does not present the appearance of a balanced report.

Although a PSR is initially used for sentencing purposes, its function does not end there.  If a defendant is sentenced to prison, it is provided to the BOP and is used for security classification, program eligibility (or denial of programs) and prison designations.  Even if a defendant is sentenced to probation, or supervised release following a term of imprisonment, the PSR continues to be relevant.  The PSR is provided to the supervising U.S. Probation officer whose opinion of the defendant, and scope of supervision, may be influenced by information in the PSR.

Based upon the foregoing, we request the following paragraphs be deleted from the PSR:

- The "La Cosa Nostra Overview" (¶¶ 1-20)

- Co-Defendant's Loansharking Business (¶¶ 21-52)

- First Extortionate Extension and Collection of Credit to John Doe #6 (¶¶ 54-63)

- Second Extortionate Extension and Collection of Credit to John Doe #6 (¶ 64)

- Co-defendants' Loansharking Business (¶¶ 65-72)

- Extortionate Collection of Credit Conspiracy (¶ 73)

- Conspiracy to Commit Wire Fraud (¶ 74-78)

12

## CONCLUSION

Based upon the foregoing, we submit a sentence of two years probation is a fair and just disposition in this case.

Dated:          November 22, 2021
                Bayside, NY


                                        Respectfully submitted,
                                        /s/
                                        Jeffrey G. Pittell


cc:    Elizabeth Geddes, AUSA
       John Cahill

# EXHIBITS

| Item | Page # |
|------|--------|
| Character Letters | 1 - 6 |
| *Google* search results, DOJ Press release | 7 - 11 |

Joshua Gibson



3/17/2021


Your Honor,


I Joshua Gibson am writing to you on behalf of my friend John Cahill whom Ive been close friends with for the last 7 years. I provide this reference in full knowledge of Mr. Cahill's pending charges against him.

I can say without doubt that Mr. Cahill work ethic, family values, and contribution to society is greatly respected among those know him. I came into association with Mr. Cahill through mutual friends and since then I have in-trusted in Mr. Cahill with in tasks that go beyond a regular friendship. I am a Supervisor and owner of a environmental company and I have called upon Mr. Cahill time after time to oversea jobs, ensure safety, and to be effectively diligent and respectful to my clients. Mr. Cahill has always performed in a leadership role by helping others, leading by example, showing up on time, and always showing pride in his work. These values and attributes of Mr. Cahill go hand and hand with values I hold deep to myself as a United States Veteran.

I trust in our judicial system and hope that my letter may shed light into Mr. Cahill excellent moral character and benefit to our society. Please do not hesitate to contact me any time for additional information, it is my pleasure and I thank you for your time.


Respectfully,

Joshua Gibson.
USCG Veteran

Sent from my iPhone

Begin forwarded message:

> **From:** Dorothy Suksdorf ███████████████ >
> **Date:** March 20, 2021 at 7:53:43 PM EDT
> **To:** "███████████████
> **Subject: Mom**

# March 20, 2021

# Dorothy Suksdorf
██████████████

Dear Judge/ Your Honor,
I am writing this letter on behalf of my son John Cahill, As John's mother this past year has been very hard on me and our family.  This was a big surprise to me to have learned of the charges that Were brought against him. Over that time John has repeatedly expressed remorse and regret for his actions during our conversations.  He understands that because of his mistake it has left his life in limbo preventing him from establishing the next phase of his life.

John has always been a very caring and loving son groing up, working hard from an early age to help since I was raising him as a single mother.  He was always into sports, Football, karate and Video games.  He has always helped the family and friends around us. He has always had a sweet heart and soul that he continues to carry with him till this day.

John also passed the FDNY test  and went through the whole process but was unable to pass the pulmonary part  of the test due to him having asthma as a baby.John has always had a

genuine heart and the need to help others. John has never been in trouble with the law; and It is with a heavy heart that I am preying that you can see your way to grant leniency that would provide him the second chance that he needs to get his life in order.  He has so much good to offer a community, and has every intension to move on  and live and establish his life away from this and start a new chapter in his life.


Sincerely yours,
Dorothy Suksdorf

## Character Letter

*Mr. John Cahill*

████████████████████████

*To Judge*

*I am Mr. John Cahill Sr. I am a retired Corrections Officer
having worked from May 1990 to May 2010 before retiring
with an Honorable Discharge. I also worked for Breezy Point
Security as a Public Safety Officer for 6 years at which time
I maintained the safety and security of Members of Service: Judges,
Senators, Congressmen, Police Officers and all persons entering
and leaving Breezy Point.*

*I am writing on behalf of my son John Cahill who is an exceptionally
good son. John has demonstrated his academics by getting the required
credits to enter the Fire Department. Exam 200 which was
held from March 17 to April 20, 2012. Out of a list of 40,864,
John scored #418.*

*John hit a bump in the road and understands the seriousness
of his offense and would appreciate some leniency
so he can demonstrate  his positive abilities to his
community.*

*My heart is always open and willing to help.*

*Maybe a program that you, Judge              see fit,
that I could help and encourage him through.*

*Thanking you  in advance.*

*Sincerely,*

LAW OFFICES

## SGARLATO & SGARLATO, PLLC

1444 CLOVE ROAD
STATEN ISLAND, N.Y. 10301

(718) 273-7900

GINA M. SGARLATO**

MICHAEL D. FITZGERALD
MAHNOOR SYED

**MEMBER N.Y. & N.J. BARS

FACSIMILE
(718) 273-9629

INFO@SGARLATOLAW.COM

RICHARD J. SGARLATO
(1945 – 2018)

SANTO R. SGARLATO, JR.
(1927 – 2015)

March 20th, 2021

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    John Cahill

Your Honor:

I am an attorney at law, having been admitted to practice in the Supreme Court, Appellate Division of the Second Judicial Department of New York and the United States District Court for the Eastern District of New York. I am writing this letter on behalf of my good friend John Cahill. I am hoping to offer you a glimpse of who he is, and that is someone that is far more than the offense he has pled to.

I have had the pleasure of knowing John for about 12 years now. John and I met when we were in high school and he had just moved around the corner from me. I believe that the situation John is in at the present time, does not define his character and upbringing.

A few years ago, my father underwent a second coronary bypass surgery. John was aware of how stressed my family and I were, since this was the second time my father had to undergo this procedure. As a result of the surgery, patients are restricted from putting too much strain on their sternum. John knew my father had a tendency of not following by the doctor's orders. Therefore, every winter since my father's procedure, John will come shovel our driveway and sidewalk, without anyone ever asking him to. John has always gone out of his way to see if my father needs help with anything and I cannot thank him enough.

John has showed me a significant amount of support, throughout my law school journey. Even when I did not believe in myself, he only saw the best in me. He has truly been a good friend to me over the years. It is my sincere hope that you take this letter into consideration, at the time of his sentencing.

Respectfully submitted,

MAHNOOR SYED, ESQ.

03/20/2021


Your Honor,


I Omar Elgamal am writing this documentation as a personal testimony of my good friend John Cahill. John has been a close family friend for over 5 years and someone who I believe to be of great character.

I met John through a mutual friend and since then he has been like a brother to me. He is a selfless friend who always helps those around him. John has been there for me whenever I needed him. Whether it was to help me move into my new home, help my mother lay down flooring, help my wife take our dog on walks when neither of us were available, John was always there. These are just small examples of how much value John brings into my life and how he is morally. I trust that these characteristics are emulated in his day to day life.

As a New Jersey State Trooper, I'm sworn by the core values of honor, duty and fidelity. It is something I take pride in. I faithfully uphold the traditions of my organization the best of my ability, which includes being fair and impartial. I understand John has made mistakes, but so have many of us. Mistakes are meant to be learned from and I have full confidence that John will learn from this experience and become a better person and contributor to society.

I hope that this letter gives you better insight on John Cahill. Please feel free to contact me personally for any additional information you may require. Thank you and have a blessed day.

Respectfully,


Trooper Omar Elgamal #8421
New Jersey State Police

 john cahill arrest 

About 7,910,000 results (0.56 seconds)

https://www.justice.gov › ... › News ⋮

**20 Defendants Charged with Crimes, Including Racketeering ...**

Oct 3, 2019 — **JOHN CAHILL** Age: 27. Staten Island, New York. DANIEL CAPALDO (also known as "The Wig" and "Shrek") Age: 54. Staten Island, New York.

https://www.nydailynews.com › new-york › ny-james-c... ⋮

**NY labor leader James Cahill has organized crime ties, feds say**

Dec 28, 2020 — **Cahill** denies he has any association with organized crime," Talkin said. "The Westies have been defunct for three decades. And **John** Gotti has ...

https://nypost.com › 2020/12/28 › union-boss-bragged-... ⋮

**Union boss bragged about ties to John Gotti: fed prosecutors**

Dec 28, 2020 — **Cahill**, the head of the New York State Building and Construction Trades Council, was charged in October, alongside 10 others, with racketeering, ...

https://www.nytimes.com › union-boss-racketeering ⋮

**Politically Connected N.Y. Union Boss Is Accused of 'Shocking ...**

Oct 1, 2020 — Federal prosecutors say James W. **Cahill** and 10 others accepted more than $100,000 in bribes in return for using their influence to help ...

http://jailroster.bc-cville.org › bartow › Inmate › Detail ⋮

**Inmate Detail - CAHILL, TRAVIS JOHN**

Booking Date 1/23/2020 5:28 AM · Release Date 8/21/2020 2:44 PM · Prisoner Type DRUG COURT · Housing Facility · Total Bond Amount $0.00 · Total Bail Amount $0.00 ...

https://www.politico.com › albany › story › 2014/10 ⋮

**Cahill calls on Schneiderman to address cocaine allegation**

Oct 20, 2014 — **John Cahill**, who was a top aide and law partner to former ... officer who he was recording as the officer **arrested** another man in the Bronx.

https://www.empirecenter.org › publications › cahill-ch... ⋮

**Cahill Charges Are An Indictment Of Cuomo's Policies**

Oct 2, 2020 — James **Cahill**, who heads the statewide New York State Building and Construction Trades Council, was charged by the U.S. Attorney for the ...

https://sanangelolive.com › news › crime › juvenile-pro... ⋮

**Juvenile Probation Officer Indicted for Possession of Lewd ...**

Sep 24, 2020 — As first reported, on Feb. 10, **John Cahill**, 54, was **arrested** for possession of child pornography. The charge came after a nearly ten month ...

https://www.odmp.org › officer › 2656-patrolman-jame... ⋮

**Patrolman James Cahill - ODMP**

Patrolman **Cahill** was shot and killed where making an **arrest** for burglary. Patrolman **Cahill** responded to a bakery, located...

https://www.saratogian.com › 2014/06/28 › state-attorn... ⋮

**State attorney general candidate John Cahill: AG's record on ...**

Jun 28, 2014 — Mahar said that the state needed to lock up more violent offenders and **arrest** drug users, steering them to treatment. "Our obligation to have a ...

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE
EASTERN DISTRICT *of* NEW YORK

U.S. Attorneys » Eastern District of New York » News

**Department of Justice**

U.S. Attorney's Office

Eastern District of New York

FOR IMMEDIATE RELEASE                                                  Thursday, October 3, 2019

# 20 Defendants Charged with Crimes, Including Racketeering, Extortion, Loansharking

## 11 Members and Associates of the Colombo Crime Family Indicted

Three indictments were unsealed today in federal court in Brooklyn variously charging 20 defendants with racketeering, extortion, loansharking, stalking, attempted sports bribery and related offenses.  Among those charged with racketeering were Joseph Amato, an alleged captain in the Colombo organized crime family of La Cosa Nostra ("the Colombo family"); Daniel Capaldo and Thomas Scorcia, alleged Colombo family members; and Joseph Amato, Jr. and Anthony Silvestro, alleged Colombo family associates.  An additional alleged Colombo family member, Vincent Scura, was also indicted.  The indictments relate to the defendants' charged criminal activities in Staten Island and elsewhere since January 2014.

The defendants were arrested this morning, and are scheduled to be arraigned this afternoon before United States Magistrate Judge Vera M. Scanlon.

Richard P. Donoghue, United States Attorney for the Eastern District of New York; William F. Sweeney, Jr., Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI); and James P. O'Neill, Commissioner, New York City Police Department (NYPD), announced the charges.

As alleged in the indictments and the government's detention letters, the investigation began in November 2016 when a GPS tracking device was found concealed on an MTA bus.  Amato had earlier obtained the device to surveil his then-girlfriend and boasted about the resources at his disposal to keep her under close surveillance.  In one email, Amato stated, "This is my island. Not yours.  I have eyes all over[.]"  In another email, Amato stated, 'I'm a MANS MAN!!!"  His then-girlfriend discovered the device on her vehicle and removed it, and it was subsequently attached to and recovered from the MTA bus at a depot n Staten Island.  Thereafter, the government obtained court-authorization to intercept communications over various cellular telephones used by the defendants.

As detailed in the government's court filings, Amato and members of his crew used violence and threats of violence to earn illegal proceeds and solidify the crew's reputation and standing.  On one occasion, an individual confronted Amato Jr. for insulting a woman in a bar.  Amato Jr. told the individual to back off, and threatened, "Do you know who my father is?"  The following day, the individual was lured to a location where Amato, Amato Jr. and other members of Amato's crew brutally beat the victim, leaving him bloodied

and in need of staples in his scalp.  On other occasions, court-authorized intercepts captured: (1) Scorcia boasting, "I told the guy sit in the car, and the kid had the tears," (2) Silvestro advising Scorcia, "[Y]ou send him a smack.  If he raises his hand back to you, we beat the bricks off him, that's it" and (3) following the commission of one of the charged crimes of violence, Amato Jr. described the crime and the victim's reaction, "[W]e abused him so bad.  Yo I had, bro, me and Pap (Silvestro), bro, had him shaking bro.  He was in tears, he was crying."

The court-authorized wiretaps also captured the defendants' scheme to fix an NCAA college basketball game.  To further the scheme, defendant Benjamin Bifalco offered members of a college basketball team thousands of dollars to intentionally lose the game.

Two firearms, two stun guns, a canister of purported tear gas and thousands of dollars in U.S. currency were recovered during court-authorized searches of residences of Amato and Scorcia.

"The mafia is not the criminal threat it once was, but we remain vigilant and will vigorously investigate and prosecute members and associates who engage in violence and extortion to intimidate victims and enrich themselves and their crime family," stated United States Attorney Donoghue.  Mr. Donoghue extended his grateful appreciation to the Drug Enforcement Administration's New York Drug Enforcement Task Force for its assistance during the investigation.

"One of the stunning things revealed in this investigation, it seems members of the mafia families that were once almost romanticized by Hollywood and pop culture, have resorted to acting like playground bullies. As alleged, they are still up to their old extortion and bribery schemes, and terrorizing their victims, but they are also still getting caught.  The FBI New York Joint Organized Crime Task Force wants to send a clear message to members of the families in our communities who continue to operate, we will do all we can to stop a true resurgence from ever happening," stated FBI Assistant Director-in-Charge Sweeney.

"The successful outcome of this investigation shows our continued efforts to target and hold responsible organized criminal syndicates," stated NYPD Commissioner O'Neill.  "I thank our investigators and law enforcement counterparts whose cooperation was vital to bringing these individuals to justice."

The charges in the indictments are allegations, and the defendants are presumed innocent unless and until proven guilty.

The government's case is being prosecuted by the Office's Organized Crime & Gangs Section.  Assistant United States Attorneys Elizabeth A. Geddes and Megan E. Farrell are in charge of the prosecution.

**The Defendants:**

**E.D.N.Y. Docket No. 19-CR-442 (S-1)(ILG)**

JOSEPH AMATO
Age: 60
Colts Neck, New Jersey

JOSEPH AMATO, JR.
Age: 26
Staten Island, New York

JOHN CAHILL
Age: 27
Staten Island, New York

DANIEL CAPALDO (also known as "The Wig" and "Shrek")
Age: 54
Staten Island, New York

PRIMO CASSARINO
Age: 31
Staten Island, New York

CHRISTOPHER COFFARO
Age: 21
Staten Island, New York

JOHN DUNN
Age: 30
Staten Island, New York

PHILIP LOMBARDO
Age: 61
Staten Island, New York

JOSEPH MARRA (also known as "Joe Fish")
Age: 58
Brooklyn, New York

ALBERT MASTERJOSEPH
Age: 57
Brooklyn, New York

DOMINICK RICIGLIANO (also known as "The Lion")
Age: 30
Staten Island, New York

THOMAS SCORCIA
Age: 52
Staten Island, New York

VINCENT SCURA (also known as "Vinny Linen")
Age: 58
Staten Island, New York

ANTHONY SILVESTRO (also known as "Bugz")
Age: 28
Staten Island, New York

KRENAR SUKA
Age: 26
Staten Island, New York

JOHN TUCCIARONE
Age: 39
Staten Island, New York

**E.D.N.Y. Docket No. 19-CR-443 (CBA)**

ANTHONY BOSCO
Age: 26
Staten Island, New York

NICHOLAS BOSCO
Age: 30
Staten Island, New York

JOSEPH BOSCO
Age: 55
Staten Island, New York

**E.D.N.Y. Docket No. 19-CR-444 (ARR)**

BENJAMIN BIFALCO
Age:  25
Staten Island, New York

---

**Attachment(s):**
Download Amato et al. superseding indictment
Download Bifalco indictment
Download Bosco indictment

**Topic(s):**
Drug Trafficking
Violent Crime

**Component(s):**
USAO - New York, Eastern

**Contact:**

John Marzulli
United States Attorney's Office
(718) 254-6323

Updated October 3, 2019